**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FREDERICK JOHN DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:25-cv-164 |
| | ) | |
| v. | ) | Judge Stephanie L. Haines |
| | ) | Magistrate Judge Patricia L. Dodge |
| | ) | |
| KENNETH HOLLIBAUGH, | ) | |
| Superintendent at Somerset SCI, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.    Recommendation

It is respectfully recommended that the Motion to Dismiss filed by Defendants Kenneth Hollibaugh, C.O.-1 Mr. Moore, C.O.-1 Mr. Wingard, Mr. T. Knepper, and David Close ("the Corrections Defendants") (ECF No. 38) be granted in part and denied in part.

### II.    Report

#### A.    Relevant Procedural History

Plaintiff Frederick John Davis, an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), brings this civil rights action pursuant to 42 U.S.C. § 1983 against the Corrections Defendants, who are various employees of the DOC, in their individual and official capacities. Plaintiff also lists 100 John and Jane Does as defendants.[1] In the Complaint (ECF 12), Plaintiff asserts violations of his constitutional rights alleged to have stemmed from incidents that occurred when Plaintiff was housed at SCI-Somerset and SCI-Houtzdale.

---

[1] Despite having named 100 Doe defendants, the substance of the Complaint only addresses John Does 1-8.

The Corrections Defendants have filed a Motion to Dismiss and a Brief in support, seeking to dismiss all of the claims against them. (ECF Nos. 38-39.) Plaintiff filed a Response. (ECF No. 51.) The motion is ripe for review.

### B.    Facts Alleged in Complaint

1. Events at SCI-Somerset

Plaintiff alleges that on November 28, 2023, while he was housed at SCI-Somerset, he was in a conference with a counselor and a unit manager during which he threatened to punch Superintendent Kenneth Hollibaugh for denying Plaintiff Z-Code status. (ECF No. 12 at 11.) Plaintiff was immediately escorted to and housed in the Restricted Housing Unit ("RHU"). (*Id.*) The next day, while he participated in property inventory with two corrections officers, he was informed that Hollibaugh called the RHU and sought to retaliate against Plaintiff by ordering the corrections officers to confiscate "extra" legal materials belonging to Plaintiff. According to Plaintiff, Hollibaugh also ordered other property of his to be destroyed. (*Id.*) Plaintiff's grievance about this matter was denied. (*Id.*)[2]

Plaintiff was released from the RHU on January 26, 2024, but was confined there again on January 29, 2024, after a conference with his counselor concerning his Z-Code status that related to a fight with his cellmate. (*Id.*) During a subsequent property inventory, Corrections Officer Wingard deprived Plaintiff of a $50 lamp for his personal use. (*Id.* at 12) Plaintiff filed a grievance about this conduct. (*Id.*)

At an unspecified time but sometime before February 16, 2024[3], Hollibaugh ordered RHU employees to cause hardship to Plaintiff. (*Id.*) As a result, Wingard began "playing" with Plaintiff's

---

[2] Plaintiff references a number of grievances in his Complaint but only attached one of them, which is largely illegible, to the Complaint.
[3] Plaintiff alleges that he filed a grievance about this matter on February 16, 2024.

food differently than with other prisoners and gave Plaintiff's special diet meals to other prisoners. (*Id.*)

On May 25, 2024, Plaintiff notified corrections officer Moore that he needed to see a sergeant or a lieutenant about an inadequate diet tray, but his request was not honored. (*Id.* at 13.) Moore falsely claimed that Plaintiff hit a corrections officer with a food tray and without justification attacked him with pepper spray. On May 28, 2024, Moore filed a false report claiming that Plaintiff hit an officer with a food tray. (*Id.* at 12.) According to Plaintiff, video of the incident shows that no food hit the officer and Moore attacked Plaintiff with pepper spray in an unjustified manner. (*Id.*)

Plaintiff met with Knepper, a hearing examiner, twice concerning the resulting misconduct. (*Id.* at 13.) Plaintiff alleges that during his first hearing before Hearing Examiner Knepper, he was advised that the food tray he threw hit C.O. Moore in the hip. (*Id.* at 13.) However, Plaintiff told Knepper that the tray never touched Moore and requested a continuance to view video of the incident. (*Id.*) According to the Complaint, Knepper then conspired with Hollibaugh to cover up a false misconduct related to the food tray incident and fabricate a second misconduct with the same number to "justify attempted murder and cover up default in procedure/avoiding incident." (*Id.* at 9, 13.) Plaintiff also alleges that he appeared before Knepper a "second time" on May 31, 2024 but does not state the result of the hearing or what, if any, discipline was imposed. (*Id.* at 13.)

Wingard and six unidentified individuals (John Does 1-6) entered Plaintiff's cell on May 25, 2024 and beat him with locked handcuffs around leather-gloved fists while Plaintiff was shackled on the ground. (*Id.* at 13.) John Doe 7 video-recorded the incident. John Doe 8, a triage nurse, stopped Plaintiff's bleeding but was informed by an unknown officer that Plaintiff needed

3

no additional medical treatment. (*Id.*) Plaintiff claims to have suffered severe injuries to his head, face, and eyes. (*Id.* at 14.)

On June 2, 2024, Plaintiff was "packed up" for transfer to SCI-Houtzdale by Wingard. (*Id.*) Wingard informed Plaintiff that he was not one of the officers who beat Plaintiff with the handcuffs around leather fists but knew who was. (*Id.* at 14.)

### 2. Events at SCI-Houtzdale

In August 2024, Plaintiff notified Unit Manager Redfern[4] of problems with his cellmate Granger but was not moved to another cell. (*Id.* at 14.) Subsequently, in January 2025, Plaintiff and Granger fought. (*Id.*) Plaintiff notified Sergeant Bickford who notified Redfern. (*Id.*) Redfern had the sergeant return to check for injuries but found none. (*Id.*) Plaintiff asserts that Redfern conspired with Hollibaugh and Superintendent Close to have Plaintiff murdered by "using Granger as a weapon." (*Id.*)

On May 7, 2025, Plaintiff was placed in the RHU by order of Redfern who denied him proper care and conspired with Hollibaugh and Close to have him murdered. (*Id.*)[5]

### C.   **Legal Standard**

A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable

---

[4] Redfern is not a defendant in this action.
[5] Finally, Plaintiff alleges that he filed a grievance on December 13, 2024 against Unit Manager Barnette for "dereliction of duty." However, Barnette is not named as a defendant and there are no factual allegations or claims asserted against him.

to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). When "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11.

### D.    **Discussion**

Plaintiff states that he is asserting civil rights claims under the Eighth and Fourteenth Amendments as well as claims under 18 U.S.C. §§ 241 and 242.[6] The Corrections Defendants raise various grounds for dismissal of Plaintiff's claims.

1.    Failure to Meet Rule 8 Pleading Standard

The Corrections Defendants first argue that Plaintiff's complaint fails to meet the pleading standard of Rule 8. They assert that after the legal conclusions in the Complaint Plaintiff are eliminated, the remainder is "little more than a circuitous narrative without any understandable basis for liability." (ECF No. 12 at 4.)

As a starting point, because Plaintiff is proceeding pro se, the allegations in the Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). If a court can reasonably read a complaint "to state a claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or unfamiliarity with pleading

---

[6] Plaintiff also cites to Article 1 Section 26 of the Pennsylvania Constitution as a basis for his claims. However, there is no authority for a private cause of action for damages under the Pennsylvania Constitution. *Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist.*, 442 Fed. Appx. 681, 687 (3d Cir. 2011). While an individual plaintiff may seek injunctive relief under the Pennsylvania Constitution, *id.* at 688, as set forth *infra*, Plaintiff's claims for injunctive relief are not viable. They should be dismissed with prejudice.

requirements." *Sears v. Kovac*, Civ. A. No. 3:24-295, 2026 WL 1138617, at *3 (W.D. Pa. April 6, 2026).

Plaintiff's Complaint is not concise, a model of clarity, or without its deficiencies. At the same time, however, the Court is able adequately review Plaintiff's allegations, however, poorly stated, and determine whether he has plausibly stated one or more claims upon which relief can be granted. Therefore, the motion to dismiss on this basis should be denied.

2.  Claims Asserted Under Criminal Statutes Must be Dismissed

Apparently relying on two criminal statutes, 18 U.S.C. §§ 241 and 242,[7] Plaintiff alleges at various points in the Complaint that Defendants Wingard, Does 1 through 7, Doe 8, Hollibaugh, and Close conspired to have him murdered. (ECF No. 12 at 8 at ¶¶ 3, 4; at 14 at ¶¶ 14, 17.) As there is no private cause of action under these statutes, *Carpenter v. Ashby*, 351 Fed. Appx. 684, 688 (3d Cir. 2009), all claims that are based on a criminal conspiracy to commit murder should be dismissed with prejudice.

3.  Official Capacity Claims

The Correction Defendants correctly argue that Plaintiff's civil rights claims against them in their official capacities are barred by the immunity afforded by the Eleventh Amendment. (ECF No. 39 at 4-6.)

The Eleventh Amendment to the United States Constitution proscribes actions for damages in the federal courts against states, their agencies, and state officials acting within their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). "Because the Pennsylvania DOC

---

[7] In summary form, 18 U.S.C. § 241 makes it a crime to conspire to deprive a person of his or her constitutional rights. 18 U.S.C. § 242 is a criminal statute that prohibits and asserts criminal penalties for deprivation of rights under color of law because of, among other things, a person's color or race.

is a part of the executive department of the Commonwealth of Pennsylvania, its employees share in the Commonwealth's Eleventh Amendment immunity to the extent that they were sued in their official capacities." *Johnson v. Wenerowicz*, 440 Fed. Appx. 60, 62 (3d Cir. 2011).

Further, claims against the Corrections Defendants in their official capacities are legally claims against the Commonwealth of Pennsylvania, and the Commonwealth is not a person who can be sued under 42 U.S.C. § 1983, even if the Eleventh Amendment permitted this Court to exercise jurisdiction over the claims. *Hafer v. Melo*, 502 U.S. 21, 25-26 (1991).

Therefore, all claims for monetary damages against the Corrections Defendants in their official capacity should be dismissed with prejudice.

The Complaint also purports to seek other forms of relief. While many aspects of the relief sought by Plaintiff are inappropriately sought in a Complaint,[8] Plaintiff also alleges that he is seeking a permanent injunction to "return all property, photos, legal documents, Z-Code, dark prescription 100% UV protected eyeglasses, transfer to Phoenix House…, return all property taken 02.01.24 & 06.02.24 by C.O. Wingard, grant unlimited legal material." (ECF No. 12 at 15.)

A state official sued for injunctive relief, is "a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" That is because prospective injunctive relief merely compels compliance with a federal law. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

---

[8] Among other things, the Complaint asks for appointment of counsel, discovery in support of Plaintiff's claims, removal of all defendants involved in his claims (presumably from their positions with the DOC) as well as their badges and certifications, an operation, and the return of $24.00.

There are several flaws with Plaintiff's claims for injunctive relief, however. First, to the extent that the injunctive relief sought relates to SCI-Somerset, his transfer to SCI-Houtzdale in June 2024 would moot many of his claims for injunctive relief. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); *Johnson v. Wenerowicz*, 440 Fed. Appx. 60, 62 (3d Cir. 2011) ("As the District Court correctly determined, Johnson's requests for injunctive and declaratory relief against the named DOC defendants were rendered moot by his transfer to SCI-Fayette[.]"); *Santiago v. Sherman*, Civ. A. No. 05-153, 2007 WL 217353, at *3 (W.D. Pa. Jan. 25, 2007) ("In the prison context, the transfer of an inmate from the facility complained of moots claims for injunctive relief involving that facility.").

As it relates to an injunction for "unlimited legal material," Z-Code status, and a transfer to Phoenix House, none of the Corrections Defendants at SCI-Somerset could accomplish such relief as Plaintiff is no longer at this correctional institution. Thus, he may not seek prospective injunctive relief as to these claims with respect to Defendants Hollibaugh, Wingard, Moore, Knepper and Does 1 through 8. With respect to Plaintiff's request for the return of all property, photos, legal documents, and property taken on February 1, 2024 and June 2, 2024, since it is possible that such property remains at SCI-Somerset, this aspect of his injunction request could implicate Superintendent Hollibaugh or Wingard, who is alleged to have taken some of Plaintiff's property.

Therefore, Plaintiff's claims for equitable relief asserted against Defendants Moore, Knepper and Does 1 through 8 in their official capacities should be dismissed. The claims for equitable relief asserted against Hollibaugh and Wingard cannot be dismissed at this time.

However, the request to dismiss the equitable claims asserted against Hollibaugh and Wingard may be renewed at a later point in this proceeding after the development of full record.

That leaves Defendant Close as a possible defendant to Plaintiff's claims for a permanent injunction. As to his requests for "unlimited legal material," Z-Code status, and a transfer to Phoenix House, these matters are related to prison safety, security, management, and control, and are solely within the province of correctional officials. *See Naranjo v. Ivicic*, 2022 WL 16951956, at *3 (W.D. Pa. Nov. 1, 2022) (holding that a plaintiff cannot use injunctive relief in attempt to make the Court the overseer of prison management, including safety decisions.) Moreover, these requests also run afoul of the PLRA's limitation on prospective relief in any civil action with respect to prison conditions. That limitation, codified at 18 U.S.C. § 3626(a)(1)(A), provides that "[t]he court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Therefore, these requests are not appropriate matters for injunctive relief.

With respect to Plaintiff's property, photos and legal documents, the Complaint does not allege that any of these materials were confiscated at or sent to SCI-Houtzdale. Further, because Plaintiff has not alleged that Defendant Close is a medical professional or is in a position to determine whether Plaintiff requires prescription eyeglasses, he cannot be compelled to afford such relief. As a result, all claims for equitable relief asserted against Close should be dismissed.

    4.  <u>Personal Involvement</u>

The Corrections Defendants also argue that Plaintiff has failed to adequately allege the personal involvement of Hollibaugh, Knepper, and Close. (ECF No. 39 at 6-9.)

In a claim under 42 U.S.C. § 1983, a plaintiff must plead a defendant's personal involvement in the alleged deprivation of the constitutional right. *See*, *e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That is because, as stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant is liable only for his or her own conduct. *See*, *e.g.*, *id.*; *see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)). Plaintiff does not allege facts that would that any of these individual defendants were personally involved in the constitutional violations asserted.

Further, the doctrine of respondeat superior, which makes an employer or supervisor automatically responsible for the wrongdoing of its employees, does not apply under § 1983. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Rode*, 845 F.2d at 1207. For that reason, a supervisor-defendant cannot be held liable for every illegal act that takes in a correctional facility. They are only liable for their own conduct.

The Court of Appeals has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v.*

10

*Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190 (3d Cir. 1995)). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1208.

### a.  Does 9 through 100

Plaintiff makes no factual allegations about John/Jane Does 9 through 100, nor does he assert any claims against them. A thorough review of the Complaint does not reveal any allegations about their possible identity or role, their personal involvement, or the existence of any potential claims against them. Therefore, John/Jane Does 9 through 100 should be dismissed.

### b.  Hollibaugh

As explained above, Plaintiff alleges that Hollibaugh directly ordered RHU employees to cause hardship to Plaintiff and confiscate and destroy his property. (*Id.*) These allegations are sufficient, at this stage, to show Hollibaugh's personal involvement. As discussed previously, however, all allegations of criminal conspiracy to commit murder against him should be dismissed with prejudice.

### c.  Knepper

Plaintiff alleges that during his first hearing before Hearing Examiner Knepper, he was advised that he threw a food tray that hit C.O. Moore in the hip. Plaintiff told Knepper that the tray never touched Moore and requested a continuance to view video of the incident. According to the Complaint, Knepper then conspired with Hollibaugh to cover up a false misconduct related to the food tray incident and fabricate a second misconduct with the same number to "justify attempted

11

murder and cover up default in procedure/avoiding incident." (*Id.* at 9, 13.) Plaintiff also alleges that he appeared before Knepper a "second time" on May 31, 2024 but does not set forth any facts about the result of the hearing or state whether any discipline was imposed.

As alleged, Plaintiff's assertions do not support Knepper's personal involvement in any claim that violated Plaintiff's civil rights. While Plaintiff alleges that he appeared twice before Knepper, and that Knepper was involved in a coverup and fabrication of false misconducts, he has not alleged that Knepper sustained the misconduct charge or imposed any discipline as a result. Thus, these allegations, even if assumed to be true, are insufficient to establish personal involvement by Knepper in any actionable wrongdoing.

Moreover, even it could be assumed for the sake of argument that a misconduct was upheld, and Plaintiff was disciplined by Knepper, neither of which is pleaded, Plaintiff has not alleged that any discipline imposed atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life. *See Harris v. Giroux*, 2017 WL 3075099, at *5 (W.D. Pa. July 19, 2017) ("Defendant Szelewski's only alleged involvement was as a hearing examiner who found Plaintiff guilty of an allegedly false misconduct report [...]. This allegation fails to implicate Defendant Szelewski's involvement in any alleged constitutional violation, as [the disciplinary sanction to the RHU] did not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); *see also Young v. Beard*, 227 Fed. Appx. 138 (3d Cir. 2007) (holding that absent allegations showing that conditions in disciplinary confinement for 930 days imposed atypical and significant hardship on an inmate in relation to ordinary incidents of prison life, the inmate was not entitled to procedural protections required by due process during prison disciplinary proceedings). As a result, the claims against Knepper should be dismissed.

d.  Close

Plaintiff baldly claims that on May 7, 2025, Close, the superintendent of SCI-Houtzdale, conspired with Hollibaugh to deprive Plaintiff of "equal protection and/or quality of life issues to deny Plaintiff access to materials for Plaintiff to file 42 USC § 1983 civil action, including, confiscating legal documents … and continue holding Plaintiff in RHU." (ECF No. 12 at 10.) He also asserts that Close was part of a criminal conspiracy with Hollibaugh and Redfern to murder Plaintiff, also related to events of May 7, 2025. (*Id.* at 14.)

Plaintiff's claims that Close was involved in a conspiracy to deny Plaintiff access to legal materials or holding him in the RHU are nothing more than legal conclusions that are completely unsupported by any factual allegations of his personal involvement. Moreover, any claim that Close engaged in a criminal conspiracy to have him murdered must be dismissed for the reasons discussed previously. Thus, the claims against Close should be dismissed.

5.  Failure to state a claim

The Corrections Defendants also contend that to the extent that Plaintiff attempts to raise claims of conspiracy, retaliation, equal protection, and excessive force, he has failed to allege sufficient facts to support any of these claims.

a.  Conspiracy

To support a civil conspiracy claim under § 1983, a plaintiff must allege sufficient facts from which a conspiratorial agreement to deprive the plaintiff of a constitutional right can be inferred. *LeBlanc v. Stedman*, 483 Fed. Appx. 666, 670 (3d Cir. 2012); *see also Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010) (holding that a § 1983 conspiracy claimant must plead specific facts addressing the time the agreement was made, the period of the conspiracy, the parties to the agreement, and the object of the conspiracy).

Conclusory allegations of an agreement are insufficient. *Weir v. Univ. of Pittsburgh*, 2023 WL 3773645, at *3 (3d Cir. June 2, 2023) (finding dismissal of conspiracy claim to be proper where plaintiff made only conclusory statements of the existence of a conspiracy without factual allegation to support that conclusion).

The Corrections Defendants contend that Plaintiff's various allegations of the existence of a conspiracy are insufficient because they fail to address with particularity the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken towards that object. (ECF No. 39 at 11.)  Indeed, Plaintiff claims the existence of a far-reaching and ill-defined conspiracy as to virtually every defendant and every incident referenced in the Complaint. Upon a review of the Complaint, however, and putting aside the numerous allegations of a criminal conspiracy to commit murder, the Court concludes that the Complaint fails to state a claim of conspiracy against any of the Corrections Defendants. Thus, the conspiracy claims against all defendants should be dismissed.

b.  Retaliation

To succeed on a claim for retaliation under the First Amendment, a plaintiff must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

Plaintiff uses the term "retaliation" to describe much of the Corrections Defendants' actions, but the only identifiable potential retaliation claims asserted by Plaintiff stem from his allegations that Hollibaugh ordered RHU employees to cause Plaintiff hardship, including the

14

confiscation and destruction of Plaintiff's property and "playing with his food," in retaliation for Plaintiff's threat to punch Hollibaugh in the face.

With regard to this claim, Plaintiff fails to allege that Hollibaugh's actions were in response to constitutionally protected conduct. Instead, he alleges that the actions were in response to his threat to assault Hollibaugh. As the United States Supreme Court has explained, "true threats" are not protected activity. *Virginia v. Black*, 538 U.S. 343, 359 (2003). "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id.* (citing *Watts v. United States*, 394 U.S. 705, 709 (1969)).

Plaintiff has therefore failed to allege a plausible claim of retaliation against any of the Corrections Defendants. These claims should be dismissed.

c.   Equal Protection

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); *see also United States v. Armstrong*, 517 U.S. 456, 456-57 (1996) (Equal Protection Clause prohibits a decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification).

Plaintiff broadly and repeatedly asserts throughout the Complaint that he was denied equal protection with respect to virtually every matter about which he complains. Beyond that, however, he provides a dearth of facts that might support such a claim. Plaintiff has not alleged that he is a

15

member of a protected class. Instead, he appears to base these claims on the premise that he is a "class of one." To state an equal protection claim as a "class of one," Plaintiff must allege: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

The only allegation in the Complaint that might be interpreted as related to a class of one claim is that Wingard "played" with Plaintiff's food differently than other prisoners and gave Plaintiff's special diet to other prisoners. (ECF No. 12 at 12). But these allegations are insufficient to support a claim that Plaintiff was similarly situated to "other prisoners" but was treated differently. Therefore, Plaintiff's equal protection claims should be dismissed.

### d. Excessive Force

Plaintiff alleges two incidents which could form the basis for a plausible excessive force claim: (1) Moore's use of pepper spray; and (2) the incident in which Wingard and six unknown officers entered Plaintiff's cell and severely beat him.

The following legal considerations are relevant to a claim for excessive force:

An Eighth Amendment claim has an objective and subjective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The defendant must act with a "sufficiently culpable state of mind," and the conduct must be objectively harmful enough to violate the Constitution. *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991). In evaluating the subjective component of an excessive force claim, the Court should consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (citations omitted). Several factors guide this analysis: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response." *Id.* (internal quotations omitted). In addressing the objective component of an Eighth Amendment claim, the question is whether the injury was more than de minimis. *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000). The use of chemical agents to subdue recalcitrant prisoners is

16

not cruel and unusual when reasonably necessary. *See Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984).

*Gibson v. Flemming*, 837 Fed. Appx. 860, 862 (3d Cir. 2020).

The Corrections Defendants argue that the pepper spray incident represents the use of de minimis force only. (ECF No. 17 at 20.) At this stage of the litigation, however, Plaintiff's allegation that Moore "attacked" him with pepper spray without any justification is sufficient to establish a plausible claim of excessive force.

The Corrections Defendants do not address the incident involving Wingard and John Does 1-6 in which Plaintiff claims to have been beaten in his cell. The allegations concerning that incident clearly establish a plausible claim for excessive force for purposes of a motion to dismiss. At the same time, however, John Doe 7 is not alleged to have been involved in the excessive use of force or any other claim, and therefore, he should be dismissed.

Accordingly, the motion to dismiss these two claims of excessive force should be denied.

### e.   Claims Against John Doe 8

Plaintiff alleges that John Doe 8, a triage nurse, stopped his bleeding and was informed to an unknown corrections officer that Plaintiff was okay and needed no other treatment. The claims against John Doe 8 appear to be conspiracy to commit murder and denial of equal protection. However, as addressed herein, Plaintiff has failed to state a claim under either of these theories as to any of the Corrections Defendants, including John Doe 8. Therefore, these claims should be dismissed.

### E.   **Amendment**

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment

17

would be inequitable or futile. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

The Court cannot conclude that it would be futile or inequitable to permit Plaintiff the opportunity to cure certain of the deficiencies identified herein. Therefore, it is recommended that Plaintiff should be permitted to file an amended complaint as to the claims not dismissed with prejudice.

## F.    <u>Conclusion</u>

For these reasons, it is respectfully recommended that Motion to Dismiss be granted in part and denied in part.  It is recommended that the following claims be dismissed with prejudice:

1.  All § 1983 claims for monetary damages against the Corrections Defendants in their official capacities;

2.  All claims for equitable relief against the Corrections Defendants other than the request for injunctive relief related to the return of Plaintiff's property against Defendants Hollibaugh and Wingard;

3.  All criminal conspiracy claims against Wingard, Does 1 through 7, Doe 8, Hollibaugh, and Close; and

4.  All claims under the Pennsylvania Constitution.

It is further recommended that the following claims be dismissed without prejudice and with leave to amend:

1.  All civil conspiracy claims asserted against any party;

2.  All retaliation claims asserted against any party;

3.  All equal protection claims asserted against any party; and

18

4. Any other claims that may have been asserted against John Doe 7, John Doe 8, John/Jane Does 9 through 100, and/or Knepper.

Finally, it is recommended that the Motion to Dismiss be denied as to the claims of excessive force against Moore, Wingard, and John Does 1 through 6, and the claim for a permanent injunction compelling Hollibaugh and/or Wingard to return Plaintiff's property.

If Plaintiff elects to file an Amended Complaint, it must include all claims Plaintiff wishes to assert in this action, except those that have been dismissed with prejudice herein. If Plaintiff elects not to file an Amended Complaint, the case should go forward only on the claims of excessive force against Moore, Wingard, and John Does 1-6, and the claim for an injunction compelling Hollibaugh and/or Wingard to return Plaintiff's property.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties may, within fourteen (14) days, file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Date: May 13, 2026

/s/ Patricia L. Dodge  
PATRICIA L. DODGE  
UNITED STATES MAGISTRATE JUDGE

19